# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| STING SOCCER OPERATIONS GROUP LP; | § | |
| ET. AL. | § | |
| | § | |
| v. | § | CASE NO. 4:15-CV-127 |
| | § | Judge Mazzant |
| JP MORGAN CHASE BANK, N.A. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court are Defendant's Motion for Summary Judgment (Dkt. #64) and Plaintiffs' Motion for Partial Summary Judgment (Dkt. #65). Having reviewing the relevant pleadings, the Court finds that Defendant's Motion for Summary Judgment should be granted in part and denied in part, and Plaintiffs' Motion for Partial Summary Judgment should be denied.

## BACKGROUND

This above-referenced case arises from Defendant JPMorgan Chase Bank, N.A.'s ("Defendant" or "JPMC") August 30, 2013 commencement of closure procedures on Plaintiffs' deposit accounts. Plaintiffs were deposit account holders at JPMC in the fall of 2013 (Dkt. #64 at p. 3). The Deposit Account Agreement (the "DAA") included the following:

> H. Closing Your Account
> Either you or we may close your account (other than a CD) at any time for any reason or for no reason. We may automatically close your account if the account balance is $0 or negative. Any closed account may be automatically reopened if we receive a deposit to the account. Either you or we may close your CD account on any maturity date without cause.
> We may send you written notice that we have closed or will close your account and return the account balance less any fees, claims, setoffs, or other amounts if the balance is greater than $1. After your account is closed, we have no obligation to accept deposits or pay any outstanding checks. We will have no liability for refusing to honor any check drawn on a closed account. We have the right to advise consumer reporting agencies and other third parties reporting agencies of accounts closed for misuse, such as kiting or overdrafts.

(Dkt. #64, Exhibit A-1 at p. 15). The DAA contained another clause, which stated:

3. Restricting your account
    We may restrict your account if it's involved in any legal or administrative proceeding or if we reasonably believe that doing so is necessary to avoid a loss.

(Dkt. #64, Exhibit A-1 at p. 15).  The DAA also contained a provision regarding "Rules governing your account," which stated, "**WE WILL NOT BE LIABLE FOR INDIRECT, SPECIAL, OR CONSEQUENTIAL DAMAGES REGARDLESS OF THE FORM OF ACTION AND EVEN IF WE HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.**"  (Dkt. #64, Exhibit A-1 at p. 16).  The DAA included a provision on "Illegal Activities," which stated that "You will not use your account to conduct transactions relating to unlawful internet gambling or any other illegal activity.  We may refuse any gambling transaction, whether lawful or not.  We may also refuse any transaction that we reasonably believe may involve illegal or suspicious activity."  (Dkt. #64, Exhibit A-1 at p. 19).

On August 15, 2013, the United States District Attorney for the Eastern District of Texas publicly "identified 18 individuals who conspired to illegally accept wagers on college and professional sporting events through approximately 25 Internet websites."  (Dkt. #64 at p. 3; Dkt. #64, Exhibit A-2).  Plaintiff Brent Coralli ("Coralli") was among the eighteen identified individuals (Dkt. #64 at p. 3).

Plaintiffs assert that JPMC had known of the criminal allegations against Coralli since approximately 2010, and had already found that the Sting Plaintiffs were not involved in any wrongdoing (Dkt. #73 at p. 3).  Plaintiffs contend that JPMC closed Coralli's personal accounts in 2010, because of the criminal allegations against him, and JPMC investigated the Sting Plaintiffs' accounts, at that time, and found no problems with those accounts (Dkt. #73 at p. 3; *see* Dkt. #73, Exhibit D).  Additionally, Chad Tefft ("Tefft"), the JPMC relationship manager for the Sting Plaintiffs, testified that he saw nothing that would lead him to believe that the Sting

Plaintiffs accounts were involved in any illegality or wrongdoing (Dkt. #73 at p. 3; Dkt. #73, Exhibit C at 51:23-52:14).

Defendant alleges that on August 30, 2013, JPMC's fraud hotline group received a call from Tefft (Dkt. #64 at p. 4). Tefft had seen news reports about Coralli pleading guilty to "a range of crimes including money laundering, illegal gambling, and tax violations." (Dkt. #64 at p. 4; *see* Dkt. #64, Exhibit A-3). Defendant asserts that Tefft expressed concern that Coralli had transferred large sums of money from the Sting Soccer accounts to the Coralli Family Limited Partnership account, which he used to pay off a personal real estate loan, and requested that the fraud hotline group close Plaintiffs' accounts (Dkt. #64 at p. 4).

Plaintiffs assert that although Craig Bogue ("Bogue"), JPMC's corporate representative, previously testified that the sole reason JPMC restricted the Sting Plaintiffs' accounts was because Tefft called the JPMC fraud hotline, JPMC has also testified that it has no idea why Tefft allegedly called and requested the accounts' closure (Dkt. #73 at p. 2; *see* Dkt. #73, Exhibit B at 37:21-38:9; 57:2-9; 71:5-9; 246:16-247:7). Plaintiffs assert that Tefft testified that (1) he never called the fraud hotline; (2) he could not recall anyone who had ever called the fraud hotline; and (3) that he could not remember the fraud hotline (Dkt. #73 at p. 2; *see* Dkt. #73, Exhibit C at 103:9-104:1). Plaintiffs contend that Tefft further testified that he could not specifically remember what new article he saw concerning Coralli, and that he did not pass on any such information to anyone within JPMC (Dkt. #73 at p. 3; *see* Dkt. #73, Exhibit C at 73:16-74:10).

JPMC placed a restriction with intent to close on each of Plaintiffs' accounts (Dkt. #64 at p. 4). On August 30, 2013, JPMC sent Plaintiffs a letter informing them that "we're closing the account(s) and we've blocked access to your accounts[,]" that "[f]unds may not be withdrawn

from this account at this time[,]" and that "you should expect to receive the final closure notification and a check of any remaining funds within 10 days" of JPMC verifying all deposits and payments (Dkt. #64, Exhibit A-4).

After placing a restriction on the account, Defendant asserts that JPMC began the process of closing Plaintiffs' accounts and distributing the balances of the accounts to Plaintiffs (Dkt. #64 at p. 4). Defendant asserts that the bulk of the balances were remitted to Plaintiffs by September 24, 2013 (Dkt. #64 at p. 5). Defendant asserts that JPMC's records reflect that all of the balances had been remitted to Plaintiffs by October, 4, 2013 (Dkt. #64 at p. 5).

Plaintiffs assert that the funds verification process takes between sixteen and twenty-one business days to verify deposits and return funds to their owners (Dkt. #73 at p. 4; *see* Dkt. #73, Exhibit B at 52:2-18)[1]. Plaintiffs contend that the funds were not returned to the Plaintiffs within that time window (Dkt. #73 at p. 4).

Plaintiffs also assert that at or around the time JPMC restricted Plaintiffs' accounts, they opened new accounts with Bank of America, N.A. ("Bank of America") (Dkt. #41 at ¶ 40). In or about December 2013, Bank of America closed some of the Plaintiffs' accounts without providing explanation for its actions (Dkt. #41 at ¶ 40). On November 23, 2015, Bank of America was served with a subpoena requesting a deposition and production of documents regarding information on the closing of Plaintiffs' accounts and communications it had with JPMC concerning Plaintiffs, their accounts, and any alleged wrongdoing by Plaintiffs (*See* Dkt.

---

[1] The sixteen to twenty-one day period appears to be the normal length of JPMC's account restriction. In their motion for partial summary judgment, Plaintiffs assert the following:

> Submitting a request for closure through the "fraud hotline" takes approximately one business day. The funds verification team typically takes approximately five business days to make its review of deposits. The account closing team then normally takes 10 to 15 business days to review the work done by the funds verification team. So, the accounts restriction will typically last 16 to 21 business days before funds are returned to the customer. This could be 24 to 31 (or more) calendar days.

(Dkt. #65 at p. 3).

#64, Exhibit B-1).  On January 4, 2016, Bank of America responded, and stated that it did not have the requested documents (Dkt. #64, Exhibit B-2).

On January 15, 2016, Plaintiffs filed their Second Amended Complaint, in which they alleged the following claims:  (1) conversion; (2) tortious interference—banking; (3) tortious interference—customers; (4) breach of contract—improper restriction; (5) breach of contract—privacy policy; (6) wrongful dishonor; (7) violation of Regulation CC; (8) business disparagement; (9) defamation; and (10) negligence (Dkt. #41).

On April 1, 2016, Defendant filed its Motion for Summary Judgment (Dkt.  #64).  On April 25, 2016, Plaintiffs filed their response (Dkt. #73).  On May 5, 2016, Defendant filed its reply (Dkt. #75).  On May 6, 2016, Defendant filed another reply brief, in which it stated objections to Plaintiffs' summary judgment evidence (Dkt. #79).  On May 18, 2016, Plaintiffs filed their sur-reply (Dkt. #81).

On April 1, 2016, Plaintiffs filed their Motion for Partial Summary Judgment (Dkt. #65).  On April 25, 2016, Defendant filed its response (Dkt. #72).  On May 6, 2016, Plaintiffs filed their reply (Dkt. #78).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The trial court must resolve all

reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257. No "mere denial of material facts nor…unsworn allegations [nor] arguments and assertions in briefs or legal memoranda" will suffice to carry this burden. *Moayedi v. Compaq Comput. Corp.*, 98 F. App'x 335, 338 (5th Cir. 2004). Rather, the Court requires "significant probative evidence" from the nonmovant in order to dismiss a request for summary judgment supported appropriately by the movant. *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001). The Court must consider all of the evidence, but must refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

# ANALYSIS

As preliminary matter, Defendant asserts in its reply that it objects and moves to strike the portions of Exhibit E, the declaration of Brent Coralli, and Exhibit J, a set of notes regarding the account closure (Dkt. #79 at pp. 1-2). Defendant argues that that Court should strike portions of the Coralli declaration because it is conclusory, and the Court should strike Exhibit J, in its entirety, because it is unauthenticated and constitutes impermissible hearsay (Dkt. #79 at pp. 1-2). Plaintiffs assert the following: (1) JPMC's reply brief is procedurally defective[2]; and (2) the evidentiary objections should be overruled (Dkt. #81 at p. 2).

Defendant asserts that portions of Exhibit E, the Coralli declaration, contain legal conclusions and should be excluded (Dkt. #79 at p. 1). Specifically, Defendant asserts that Coralli cannot offer testimony on causation. (Dkt. #79 at pp. 1-2).

"Under Texas law, '[l]ay testimony is adequate to prove causation in those cases in which general experience and common sense will enable a layman to determine, with reasonable probability, the causal relationship between the event and the condition.'" *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875 (5th Cir. 2004) (quoting *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733 (Tex. 1984)). "Generally, lay testimony establishing a sequence of events which provides a strong, logically traceable connection between the event and the condition is sufficient proof of causation." *Id.* "Therefore, in determining whether lay testimony is sufficient to prove causation, Texas courts looks at the nature of the lay testimony and the nature of the injury." *Id.*

---

[2] Plaintiffs object to JPMC's multiple replies and ask that the Court strike them (Dkt. #81 at p. 2). Local Rule CV-7 states that "[e]ach pleading, motion, or response to a motion must be filed as a separate document, except for motions for alternative relief…." The Local Rules also states that, in regards to case dispositive motions, "[a]ny reply or sur-reply to an opposed case dispositive motion filed pursuant to Section (f) of this rule shall not exceed ten pages, excluding attachments." L.R. CV-7(a)(1). The Court finds that Defendant's reply briefs do not meet the requirements, under the Local Rules of this district. The Court will still make a determination on the merits of Defendant's evidentiary objections, but the parties should note of their obligation to meet the requirements of the Local Rules in the future.

The Court finds that Coralli's statements express how Defendant's action affected his business (*See* Dkt. #73, Exhibit E). Additionally, as an officer of the Sting Soccer entities, Coralli would have knowledge as to the effect of the restriction and/or closure of the accounts on the Sting Soccer entities. Therefore, the Court finds that Defendant's objection should be overruled.

Defendant also asserts that Exhibit J should be stricken, for the following reasons: (1) it is an unauthenticated document; and (2) it contains impermissible hearsay (Dkt. #79 at pp. 2-3). Plaintiffs assert that the document is properly authenticated, and include a declaration from Melissa Johnson ("Johnson"), in which she stated that the notes were created by former Sting Soccer employee Lisa McGill ("McGill") in the course of her work for the Sting Entities (Dkt. #81 at p. 3).

Authentication of a document is a condition precedent to its admission. *See* FED. R. EVID. 901(a). "Rule 901(a) 'merely requires some evidence which is sufficient to support a finding that the evidence in question is what its proponent claims it to be.'" *United States v. Ceballos*, 789 F.3d 607, 618 (5th Cir. 2015) (quoting *United States v. Isiwele*, 635 F.3d 196, 200 (5th Cir. 2011) (quoting *United States v. Watkins*, 591 F.3d 780, 787 (5th Cir. 2009))). "Testimony by a witness with knowledge of the item, the item's own distinctive characteristics, and the circumstances of the item's discovery may each suffice to authenticate evidence." *Ceballos*, 789 F.3d at 618-19; *see United States v. Barlow*, 568 F.3d 215, 220 (5th Cir. 2009); *In re McLain*, 516 F.3d 301, 308 (5th Cir. 2008).

The Court finds that the document is not properly authenticated. Although Johnson's declaration states that the notes were created by McGill in the course and scope of her duties while working at Sting Soccer, the Court finds that there is no evidence that the document is

what Plaintiffs contend it to be.  Therefore, the Court finds that Defendant's objections should be sustained, and Exhibit J will be stricken from the summary judgment record.[3]

In the present case, Defendant JPMorgan Chase Bank, N.A. moves for summary judgment the following claims:  (1) conversion; (2) tortious interference—banking; (3) tortious interference—customers; (4) breach of contract—improper restriction; (5) breach of contract—privacy policy; (6) wrongful dishonor; (7) violation of Regulation CC; (8) business disparagement; (9) defamation; (10) negligence; and (11) Plaintiffs' claim for conclusory damages (Dkt. #64).  Plaintiffs move for partial summary judgment on its breach of contract—improper restriction claim (Dkt. #65).

*Conversion*

Defendant moves for summary judgment on Plaintiffs' conversion claim (Dkt. #64 at p. 7).  Defendant asserts that Plaintiffs' deposit accounts with JPMC are not different from other ordinary deposit accounts, and are governed by the same deposit account agreement (Dkt. #64 at pp. 8-9).  Alternatively, Defendant asserts that Plaintiffs' claim is barred by the economic loss doctrine.[4]

As a preliminary matter, Defendant asserts that Plaintiffs' conversion claim should be dismissed under the economic loss doctrine.  "Texas courts follow '[t]he economic loss rule [which] generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy.'"  *Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 292 (5th Cir. 2016) (quoting *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014)).  Two

---

[3] As the Court found Exhibit J should be stricken as it is unauthenticated, the Court will not address Defendant's argument that Exhibit J contains hearsay statements.
[4] Although Plaintiffs address the economic loss doctrine for other claims, they do not address the economic loss doctrine, as it relates to their conversion claim.

factors determine whether the economic loss doctrine bars a plaintiff's tort claim: the source of the duty and the nature of the plaintiff's injury. *Kiper v. BAC Home Loans Serv., LP*, 884 F. Supp. 2d 561, 573 (S.D. Tex. 2012), *aff'd sub nom. Kiper v. BAC Home Loans Serv., L.P.*, 534 F. App'x 266 (5th Cir. 2013).

The economic loss doctrine "holds that if the defendant's conduct would give rise to liability only because it breaches the parties' agreement, the plaintiff's cause of action sounds only in contract." *Singh v. JP Morgan Chase Bank, NA*, No. 4:11-CV-607, 2012 WL 3904827, at *7 (E.D. Tex. July 31, 2012), *report and recommendation adopted*, No. 4:11CV607, 2012 WL 3891060 (E.D. Tex. Sept. 7, 2012) (citing *Exxon Mobil Corp. v. Kinder Morgan Operating L.P. "A,"* 192 S.W.3d 120, 127 (Tex. App.—Houston [14th Dist.] 2006, no pet.)). The mere existence of a tort duty does not necessarily mean that a violation would result in a tort claim. *Id.* (citing *In re Soporex, Inc.*, 446 B.R. 750, 788 (N.D. Tex. 2011)). Further, "when the contract spells out the parties' respective rights about a subject matter, the contract, not the common law tort theories, governs any dispute about the subject matter." *Id.* (quoting *Exxon Mobil Corp.*, 192 S.W.3d at 127). "Thus, the rule restricts contracting parties to contractual remedies for economic losses associated with their relationship, 'even when the breaching might be reasonably viewed as a consequence of a contracting party's negligence.'" *McDaniel v. JPMorgan Chase Bank, N.A.*, No. 1:12-CV-392, 2012 WL 6114944, at *7 (E.D. Tex. Dec. 10, 2012) (quoting *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 13 (Tex. 2007)).

However, it does not bar all tort claims arising out of a contractual setting. In *Chapman Custom Homes, Inc.*, the Supreme Court of Texas stated that "a party [cannot] avoid tort liability to the world simply by entering into a contract with one party [otherwise the] economic loss rule [would] swallow all claims between contractual and commercial strangers." 445 S.W.3d at 718

(quoting *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 419 (Tex. 2011)). Therefore, "a party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." *Id.*; *see LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234, 242-43 (Tex. 2014).

After reviewing the relevant pleadings, the Court finds that the economic loss doctrine does apply to Plaintiffs' conversion action. Plaintiffs assert that "Defendant converted funds in Plaintiffs' accounts that were held for the benefit of third parties by withholding them without justification and/or for an unreasonable time." (Dkt. #41 at ¶ 34). Additionally, Plaintiffs assert that "Defendant placed an essentially indefinite restriction on the member teams' funds without any explanation and/or justification." (Dkt. #41 at ¶ 34).

The Court finds that Plaintiffs' conversion claim does rise out of the DAA signed between Plaintiffs and JPMC. Additionally, Plaintiffs do not allege an independent injury, apart from the injury incurred by JPMC's alleged breach of the DAA. The Court finds that, based upon the evidence, Plaintiffs' conversion claim would give rise to the liability only because it breaches the DAA between JPMC and Plaintiffs, and as such, it is barred by the economic loss doctrine. *See Singh*, 2012 WL 3904827, at *7. Therefore, the Court finds that Defendant's motion for summary judgment should be granted as to Plaintiffs' conversion claim.[5]

*Tortious Interference—Banking*

Defendant also asserts that the Court should grant summary judgment as to Plaintiffs' claim under tortious interference with prospective banking business relationships (*See* Dkt. #64 at pp. 10-11). Specifically, Defendant asserts the following: (1) Plaintiffs' claims are barred by the applicable one-year statute of limitations period; (2) Plaintiffs have no evidence of any

---

[5] Defendant also asserts that no cause of action exists for Plaintiffs' claim of conversion as the deposit accounts were governed by the DAA. As the Court found that the claim is barred by the economic loss doctrine, it will not address Defendant's other claim.

communication between JPMC and Bank of America relating to Coralli's criminal activity (Dkt. #64 at pp. 10-11).  In their response, Plaintiffs do not address this claim (*See* Dkt. #73).

It appears from Defendant's Motion for Summary Judgment and Plaintiffs' Second Amended Complaint that Defendant is requesting that the Court dismiss both Plaintiffs' claim for tortious interference with an existing contract and tortious interference with prospective business relationship.[6]  Therefore, the Court will address those arguments below.

From the outset, Defendant argues that Plaintiffs' claims for tortious interference should be dismissed because they are barred by the applicable one-year statute of limitations period (Dkt. #64 at p. 10).  "A two-year statute of limitations [period] typically applies to [tortious interference] causes of action.  However when allegedly defamatory statements form the sole basis for plaintiff's tortious interference claim, defamation's one-year statute of limitations applies."  *Nationwide Bi-Weekly Admin, Inc. v. Belo Corp.*, 512 F.3d 137, 146 (5th Cir. 2007) (citation omitted); *see Martinez v. Hardy*, 864 S.W.2d 767, 776 (Tex. App.—Houston [14th Dist.] 1993, no writ).  Plaintiffs assert that JPMC provided Bank of America "with false and/or defamatory information that induced Bank of America to end its relationship with Plaintiffs." (Dkt. #41 at ¶ 41).  Plaintiffs assert that the closure took place, in or about December 2013 (Dkt. #41 at ¶ 40).  However, Plaintiffs filed the present case in state court on January 20, 2015, more than a year after the alleged statements took place.  Therefore, the Court finds that Defendant's motion for summary judgment regarding Plaintiffs' claim for tortious interference with the Bank of America contract is granted.[7]

---

[6] In its motion for summary judgment, Defendant only cites to the tortious interference with prospective business relationship standard; however, the Court finds that Defendant's arguments also go to Plaintiffs' tortious interference with an existing contract claims as well.

[7] In its motion for summary judgment, Defendant only contends that Plaintiffs' claim against Defendant regarding the Bank of America contract is time-barred.  Therefore, the Court will address the merits of Plaintiffs' claim of tortious interference with prospective business relationship with the other banking entities.  Additionally, as the

"Texas law protects existing and prospective contracts from interference." *Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Discount Centers, Inc.*, 200 F.3d 307, 316 (5th Cir. 2000) (quoting *Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.*, 793 S.W.2d 660, 665 (Tex. 1990)). Under Texas law, "[t]o establish a claim for tortious inference with prospective business relations, a plaintiff must prove that: (1) there was a reasonable probability that the parties would have entered into a contractual relationship; (2) the defendant committed an 'independently tortious or unlawful act' that prevent the relationship from occurring; (3) the defendant committed the act with a conscious desire to prevent the relationship from occurring or knew that the interference was certain or substantially certain to occur as a result of his conduct; and (4) the plaintiff suffered actual harm or damage as a result of the defendant's interference— that is, that the defendant's actions prevented the relationship from occurring." *Alliantgroup, L.P. v. Feingold*, 803 F. Supp. 2d 610, 628 (S.D. Tex. 2011) (citing *Faucette v. Chantos*, 322 S.W.3d 901, 913-14 (Tex. App.—Houston [14th Dist.] 2010, no pet. h.)); *see also Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001); *Martin v. Kroger Co.*, 65 F. Supp. 2d 516, 563 (S.D. Tex. 1999).

Additionally, in a tortious interference with a prospective business relationship claim, "[t]he plaintiff must show that the defendant's conduct was either independently tortious or unlawful, that is, that the conduct violated some other recognized tort duty." *Alliantgroup, L.P.*, 803 F. Supp. 2d at 628; *see Sturges*, 52 S.W.3d at 726; *Astoria Indus. Of Iowa, Inc. v. SNF, Inc.*, 223 S.W.3d 616, 632 (Tex. App.—Fort Worth 2007, pet. denied).

The "prevented the relationship from occurring" element requires "at minimum, that the tortious conduct constitutes a cause in fact that prevented the prospective business relationship from coming to fruition in the form of a contractual agreement. The test for cause in fact, or 'but for causation,' is whether the act or

Court finds that Plaintiffs' claim is barred by the statute of limitations, it will not discuss Defendant's claim as to whether evidence exists regarding Plaintiffs' claim for tortious interference with an existing contract.

omission was a substantial factor in causing the injury 'without which the harm would not have occurred.'"

*Id.* at 628-29 (quoting *COC Servs., Ltd. v. CompUSA, Inc.*, 150 S.W.3d 654, 679 (Tex. App.—Dallas 2004, pet. denied) (quoting *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995))). "A plaintiff seeking to recover for tortious interference with prospective business relationships must establish proximate causation and damages with evidence rising above mere suspicion or speculation." *Id.* at 629; *see B. Cantrell Oil Co. v. Hino Gas Sales, Inc.*, 756 S.W.2d 781, 784 (Tex. App.—Corpus Christi 1988, no writ), *superseded by statute on other grounds*.

In their Second Amended Complaint, Plaintiffs allege that "[they] have since approached other banks concerning opening new accounts. In at least one occasion, a bank has been prepared to open numerous accounts for the Plaintiffs but has cancelled the opening at the last minute." (Dkt. #41 at ¶ 42). However, there is no evidence in the present case demonstrating that any interference by Defendant exists. In fact, when Mutual of Omaha Bank ("Mutual of Omaha") was subpoenaed to testify and produce documents at a deposition the present case, it sent a letter to Plaintiffs' counsel stating that "[a]fter a thorough search of our records, [Mutual of Omaha was] unable to find any documents responsive to [the] Subpoena request regarding the above-mentioned case." (Dkt. #64, Exhibit B-4). There is no evidence that JPMC made any allegedly defamatory statement to a third-party bank, and that JPMC acted to prevent any relationship between Plaintiffs and a third-party bank from occurring. Therefore, the Court finds that Defendant's motion for summary judgment should be granted as to Plaintiffs' claim for tortious interference with a prospective business relationship, as it relates to the third-party banks.

*Tortious Interference—Customers*

Defendant also claims that summary judgment is appropriate as to Plaintiffs' claim for tortious interference with an existing contract, as it relates to the contracts between Plaintiffs and Plaintiffs' customers (Dkt. #64 at p. 12). "To maintain a cause of action for tortious interference with an existing contract, a plaintiff must demonstrate '(1) the existence of a contract subject to interference, (2) the act of interference was willful and intentional, (3) such intentional act was a proximate cause of plaintiff's damage and (4) actual damage or loss occurred.'" *Stewart Glass*, 200 F.3d at 316 (quoting *Johnson v. Hosp. Corp. of Am.*, 95 F.3d 383, 394 (5th Cir. 1996) (citing *Victoria Bank & Tr. Co. v. Brady*, 811 S.W.2d 931, 939 (Tex. 1991))); *see Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002).

First, Defendant asserts that Plaintiffs' claims are barred by the applicable one-year statute of limitations (Dkt. #75 at pp. 5-6). "A two-year statute of limitations [period] typically applies to [tortious interference] causes of action." *Nationwide Bi-Weekly Admin, Inc.*, 512 F.3d at 146; *see Martinez v. Hardy*, 864 S.W.2d 767, 776 (Tex. App.—Houston [14th Dist.] 1993, no writ). Unlike Plaintiffs' tortious interference claim against the third-party banking entities, it does not appear that Plaintiffs' are asserting defamation claims for their tortious interference with the existing contracts that the Sting Entities had with their customers (*See* Dkt. #41). Therefore, a two-year statute of limitations period would be applicable to the present claim. As Plaintiffs filed the present action in state court on January 21, 2015, the Court finds that Plaintiffs' claim is not barred by the statute of limitations.

Additionally, Defendant asserts that Plaintiffs' claim is barred by the economic loss doctrine (Dkt. #64 at p. 12). After reviewing the relevant pleadings, the Court finds that

Plaintiffs' tortious interference with an existing contract claim arises separate and apart from its breach of contract claim against JPMC. Plaintiffs assert the following:

> Defendant knew of the relationship between the Plaintiff and its customers with respect to the bank accounts held with Defendant. The Defendant knew that interference with such relationships was certain or substantially certain to occur as a result of its conduct in restricting the accounts.

(Dkt. #41 at ¶ 52). Although the action is derived from JPMC's decision to restrict Plaintiffs' accounts, Plaintiffs' tortious interference claim alleges an independent duty breached separately from its contractual undertaking, and the harm Plaintiffs allegedly suffered is not merely the economic loss of a contractual benefit. *See Chapman Custom Homes, Inc.*, 445 S.W.3d at 718; *see LAN/STV*, 435 S.W.3d at 242-43. Therefore, the Court finds that Plaintiffs' tortious interference claim, with respect to the contracts between the Sting Entities and their customers, is not barred by the economic loss doctrine.

Defendant also asserts that the claim fails because Plaintiffs have no evidence of (1) any contract between the Sting Entities and their customers; or (2) any willful or intentional interference by JPMC with that contract (Dkt. #64 at p. 12). Plaintiffs assert that all of the Sting Entity members sign yearly contracts with Plaintiffs (Dkt. #73 at pp. 11-12). Plaintiffs also contend that "the evidence…shows that JPMC believed that the damage to Plaintiffs' business was substantially certain to result from the unannounced restriction on all accounts." (Dkt. #73 at p. 12).

The evidence demonstrates that the member teams signed yearly contracts with the Sting Plaintiffs (Dkt. #73, Exhibit E). The teams that had funds that were affected by JPMC's alleged actions had contracts with the Sting Entities (Dkt. #73, Exhibit E). Additionally, the evidence shows that Tefft, at a minimum, was aware that funds in many of the Sting Plaintiffs' bank accounts were held for the benefit of the member teams and belonged to the member teams (Dkt.

#73, Exhibit C at 34:15-36:15).  Tefft also knew that the funds were used for the teams' expenses and travel (Dkt. #73, Exhibit C at 38:6-25).  Additionally, JPMC was aware that restricting accounts could harm customer relationships.  On September 1, 2013, Coralli wrote to JPMC and stated:

> We are a large soccer organization and have over 100 accounts that are used by my administration and each individual team.  These accounts represent over 5,000 individuals, 2500 families that are impacted by this action.  We have teams travelling all over the country on this holiday weekend playing in tournaments that cannot access their funds by using their debit cards for hotel check-ins, autos, and meals.  We have a lot of upset people and this has done [] tremendous damage to my business and the faith of the members of my Organization in the Sting Organization itself.

(Dkt. #73, Exhibit G).  The Court finds that Defendant has not met its burden of demonstrating that no genuine issue of material fact exists; and therefore, the Court finds that its motion for summary judgment should be denied as to Plaintiffs' tortious interference with an existing contract claim.

*Breach of Contract—Improper Restriction*

Defendant also claims that Plaintiffs' claim for breach of contract, based upon the restriction of the accounts, should be dismissed as Plaintiffs have not identified a contract provision that JPMC breached (Dkt. #64 at p. 13).  Plaintiffs also claim that the Court should grant summary judgment on this claim; however, in their motion for partial summary judgment, they assert that summary judgment is warranted because Defendant cannot demonstrate that its restriction of Plaintiffs' accounts was justified (Dkt. #65 at p. 5).

"To prevail on a breach of contract claim, a party must establish the following elements: (1) a valid contract existed between the plaintiff and the defendant; (2) the plaintiff tendered performance or was excused from doing so; (3) the defendant breached the terms of the contract; and (4) the plaintiff sustained damages as a result of the defendant's breach."  *West v. Triple B*

*Servs., LLP*, 264 S.W.3d 440, 446 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *see Marquis*

*Acquisitions, Inc. v. Steadfast Ins. Co.*, 409 S.W.3d 808 (Tex. App.—Dallas 2013, no pet.).

After reviewing the relevant pleadings, the Court finds that neither Plaintiffs nor

Defendant have met their burdens in demonstrating that there is no material issue of fact on this

claim. The DAA stated that,

> H. Closing Your Account
> Either you or we may close your account (other than a CD) at any time for any reason or for no reason. We may automatically close your account if the account balance is $0 or negative. Any closed account may be automatically reopened if we receive a deposit to the account. Either you or we may close your CD account on any maturity date without cause.
> We may send you written notice that we have closed or will close your account and return the account balance less any fees, claims, setoffs, or other amounts if the balance is greater than $1. After your account is closed, we have no obligation to accept deposits or pay any outstanding checks. We will have no liability for refusing to honor any check drawn on a closed account. We have the right to advise consumer reporting agencies and other third parties reporting agencies of accounts closed for misuse, such as kiting or overdrafts.

(Dkt. #64, Exhibit A-1 at p. 15). It also included a provision, which stated,

> 3. Restricting your account
> We may restrict your account if it's involved in any legal or administrative proceeding or if we reasonably believe that doing so is necessary to avoid a loss.

(Dkt. #64, Exhibit A-1 at p. 15). A question of fact remains as to whether JPMC had a reason to

think the account was involved in a legal proceeding that would require it to restrict Plaintiffs'

accounts. Therefore, the Court finds that Defendant's motion for summary judgment should be

denied as to Plaintiffs' breach of contract claim that is based upon the restriction of the accounts,

and Plaintiffs' motion for partial summary judgment should be denied.

*Breach of Contract—Privacy Policy*

Defendant also claims that Plaintiffs' claim for breach of the privacy policy should be

dismissed as there is no evidence that any statement was made by JPMC (Dkt. #64 at p. 14).

Plaintiffs assert that the JPMC privacy notice provided for only a limited sharing of information by JPMC (Dkt. #73 at p. 14). Plaintiffs assert that JPMC shared significantly more information than the privacy policy permitted (Dkt. #73 at p. 14). Specifically, they assert that JPMC informed Kermit Swaner ("Swaner") that funds would not be released from the accounts due to the Sting Plaintiffs' involvement in a "legal action." (Dkt. #73 at pp. 14-15).[8] Defendant asserts that Swaner was "a team manager with account access…." (Dkt. #75 at p. 6 n. 17). Additionally, evidence presented by Defendant demonstrates that Swaner is listed as a signer on the account (Dkt. #75, Exhibit B-1). The Court finds that a question of fact exists as to whether JPMC breached its privacy policy; and therefore, Defendant's summary judgment as to their breach of contract claim regarding the privacy policy is denied.

*Wrongful Dishonor*

Defendant also asserts that summary judgment should be granted as to Plaintiffs' wrongful dishonor claim (Dkt. #64 at p. 15).

Section 4.402 of the Texas Business and Commerce Code concerns a bank customer's right to recover for wrongful dishonor of checks, and provides:

> A payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item. Liability is limited to actual damages proved and may include damages for arrest or prosecution of the customer or other consequential damages. Whether any consequential damages are proximately caused by the wrongful dishonor is a question of fact to be determined in each case.

Defendant claims that summary judgment is appropriate for the following reasons: (1) JPMC placed a restriction on the account because it believed it could be involved in Coralli's illegal sports gambling activities; (2) Plaintiffs have not identified any transactions that were wrongfully dishonored; and (3) Plaintiffs have not identified any damages that they incurred (Dkt. #64 at p.

---

[8] Plaintiffs' also cited an instance between JPMC and Diana Decannini. However, the instance was reference in Exhibit J, which was stricken by the Court, and therefore, the Court will not consider this evidence.

16). After reviewing the relevant evidence, the Court finds that a question of fact exists, and Defendant has not met their burden in demonstrating that no material fact exists as to Plaintiffs' wrongful dishonor claim. Plaintiffs' wrongful dishonor claim should proceed to trial. Therefore, the Court finds that Defendant's motion for summary judgment should be denied as this claim.

*Violation of Regulation CC*

Defendant also asserts that Plaintiffs' claims that JPMC violated Regulation CC should be dismissed because (1) their claim is barred by the one-year statute of limitations period; and (2) JPMC did not fail to make a specific deposit available as is required for a claim under Regulation CC (Dkt. #64 at pp. 18-19). Title 12 Code of Federal Regulations section 229.21(d) states, "[a]ny action under this section may be brought in any United States district court or in any other court of competent jurisdiction, and shall be brought *within one year after the date of the occurrence of the violation involved*." (emphasis added). In the present case, JPMC fully closed Plaintiffs' accounts and returned their funds by October 4, 2013 (Dkt. #64 at p. 19). Plaintiffs filed the present action in state court on January 20, 2015 (Dkt. #64 at p. 19). The Court finds that Plaintiffs' claim of violation of Regulation CC is time-barred, as it was filed more than one-year after the occurrence of the alleged violation took place. Therefore, Defendant's motion for summary judgment as the violation of Regulation CC is granted.[9]

*Business Disparagement*

Defendant also asserts that Plaintiffs' business disparagement claim is barred by the applicable one-year statute of limitations period (Dkt. #64 at p. 19). Additionally, Defendant asserts that Plaintiffs have no evidence of any communication between JPMC and any other bank or customer relating to them or Coralli's criminal activity (Dkt. #64 at p. 20).

---

[9] As the Court granted summary judgment as to Defendant's argument that Plaintiffs' claim is barred by the applicable statute of limitations period, it will not address Defendant's other claims.

First, Defendant asserts that Plaintiffs' business disparagement claim is barred by a one-year statute of limitations period (Dkt. #64 at p. 19). Plaintiffs assert that their business disparagement claim is not barred because the applicable statute of limitation is a two-year time period (Dkt. #73 at p. 19).

"To prevail on a business disparagement claim, a plaintiff must establish that (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) the resulted in special damages to the plaintiff." *Forbes, Inc. v. Grenada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003) (citing *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987)).

> A business disparagement claim is similar in many respects to a defamation action. The two torts differ in that defamation actions chiefly serve to protect the personal reputation of an injured party, while a business disparagement claim protects economic interests. In *Hurlbut*, a suit brought by an insurance agent against his former employer, we noted that a business disparagement defendant may be held liable "only if he knew of the falsity or acted with reckless disregard concerning it, or *if he acted with ill will or intended to interfere in the economic interest of the plaintiff in an unprivileged fashion.*"

*Id.*

"Business disparagement actions are governed by a two-year limitations period when the injury alleged is direct pecuniary loss rather than a personal loss in reputation." *Marquis v. OmniGuide, Inc.*, No. 3:09-CV-2092-D, 2011 WL 321112, at *5 (N.D. Tex. Jan. 28, 2011); *see Hurlbut*, 749 S.W.2d 762, 767 (Tex. 1987) (treating business disparagement action as slander action governed by one-year statute of limitations because of lack of pecuniary loss); *Newsom v. Brod*, 89 S.W.3d 732, 734 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (acknowledging that business disparagement has two-year statute of limitations, but upholding application of one-year statute of limitations where injuries were primarily personal rather than relating to inference of commercial or economic relations).

"To determine the applicable limitations period, the court must decide whether the gravamen of the damages alleged in Plaintiffs' claim is personal or pecuniary." *Marquis*, 2011 WL 321112, at \*5; *see Hurlbut*, 749 S.W.2d at 767-77 (noting that slander and business disparagement protect different interests, and requiring evidence of damage to economic interests for claim to be evaluated as business disparagement claim). "Several Texas courts, and the Fifth Circuit, have applied *Hurlbut* to treat business disparagement actions as defamation claims where the gravamen was defamatory injury to the plaintiff's reputation and there was no evidence of pecuniary loss." *Marquis*, 2011 WL 321112, at \*5; *see, e.g.*, *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 146-47 (5th Cir. 2007) (applying *Hurlbut* to dismiss under Rule 12(b)(6) where plaintiff failed to allege any specific economic loss and "failed to provide any meaningful basis upon which to distinguish [business disparagement] claim from the defamation claim"); *Williamson v. New Times, Inc.*, 980 S.W.2d 706, 710 (Tex. App.—Fort Worth 1998, no pet.) (applying one-year statute of limitations where damages alleged were primarily personal and general, such as "injury to personal reputation, humiliation, or mental anguish," even though incidental or consequential professional losses were also pleaded and proved.). Therefore, "[a] plaintiff seeking damages for business disparagement must prove special damages resulting from the harm. If the damages alleged are primarily personal and general—e.g., injury to personal reputation, humiliation, or mental anguish—then the cause of action is one for libel or slander, although incidental or consequential professional losses also are pleaded and proved." *Mayfield v. Fullhart*, 444 S.W.3d 222, 230-231 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

In the present case, Plaintiffs allege that various statements were made during the account restriction and closure process—which occurred between August 30, 2013, and October 4, 2013

(Dkt. #41 at ¶ 83). Plaintiffs contend that Defendant's statements harmed their business through lost revenue, lost profits, lost business opportunities, damage to the Plaintiffs' good will and reputation, and expense incurred in securing alternative banking relationships (Dkt. #41 at ¶ 85).

The Court finds that the two-year statute of limitations applies in the present case. Plaintiffs pleaded pecuniary business losses in their Second Amended Complaint, not personal and general damages (Dkt. #41 at ¶ 85). As the two-year statute of limitations applies, the Court finds that Plaintiffs filed suit within that two year period, and thus, the statute of limitations does not bar their claim.

Defendant also asserts that Plaintiffs have no evidence of any communication between JPMC and any other bank or customer relating to them or Coralli's criminal activity (Dkt. #64 at p. 20). Upon review of the summary judgment evidence, the Court finds that Defendant has not met its burden of demonstrating that no material question of facts exists; and therefore, Defendant's motion for summary judgment as to Plaintiffs' business disparagement claim is denied.

*Defamation*

Defendant also asserts that summary judgment should be granted as to Plaintiffs' defamation claim for the following reasons: (1) the claims are barred under the one-year statute of limitations; (2) there is no evidence of any false and defamatory statement, or any malice, on JPMC's regarding the truth the of the statement; and (3) there is no evidence of any damages suffered by Plaintiffs (Dkt. #64 at p. 21). Plaintiffs do not address the statute of limitations argument.[10]

---

[10] Plaintiffs state that they incorporate by reference the arguments made elsewhere in their response for purposes of their defamation claim (Dkt. #73 at p 20). However, the statute of limitations in regards to Plaintiffs' defamation claim is separate and apart from the other claims arguments. As such, the Court finds that Plaintiffs have not addressed this argument.

"A one-year statute of limitations applies to an action for defamation." *San Antonio Credit Union v. O'Connor*, 115 S.W.3d 82, 96 (Tex. App.—San Antonio 2003, no pet.) (citing Tex. Civ. Prac. & Rem. Code § 16.002(a)). "An action for defamation accrues when the defamatory statement is published." *Id.*, *see Kelley v. Rinkle*, 532 S.W.2d 947, 949 (Tex. 1976) (holding "that the period of limitations for causes of action for libel of one's credit reputation by publication of defamatory report to a credit agency begins to runs when the person defamed learns of, or should by reasonable diligence have learned of, the existence of the credit report").

The Court finds that Plaintiffs' defamation claim is barred by the one-year statute of limitations. Plaintiffs asserts that "Defendant has published false information concerning the Plaintiffs and their business practices to the Plaintiffs' then existing customers." (Dkt. #41 at ¶ 87). On September 18, 2013, JPMC told Swaner that the funds could not be released due to a legal action (Dkt. #73, Exhibit I). Plaintiffs also assert that "Defendant has published false statements to other banking institutions concerning the Plaintiffs that have caused those banks to end or not enter into banking relationships with Plaintiffs." (Dkt. #41 at ¶ 88). Plaintiffs assert that the closure of their Bank of America account took place, in or about December 2013 (Dkt. #41 at ¶ 40). However, Plaintiffs filed the present case in state court on January 20, 2015, more than a year after the alleged defamatory statements took place, which is over one year after both incidents took place. Therefore, the Court finds that Defendant's motion for summary judgment Plaintiffs' claim for defamation should be granted.[11]

---

[11] As the Court granted summary judgment as to Defendant's statute of limitations argument, it will not address Defendant's other claims.

*Negligence*

Defendant asserts that the Court should grant summary judgment as to Plaintiffs' negligence claim because the claim is barred under the economic loss doctrine (Dkt. #64 at p. 22).

"The elements of a negligence claim are: (1) a legal duty owed by one person to another; (2) breach of that duty; and (3) damages proximately caused by the breach." *Johnson v. Wells Fargo Bank, N.A.*, 999 F. Supp. 2d 919, 930 (N.D. Tex. 2014); *see Lane v. Halliburton*, 529 F.3d 548, 565 (5th Cir. 2008); *Nabors Drilling USA, Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009). As previously stated, "the economic loss rule 'generally precludes recovery in tort for economic loss resulting from the failure of a party to perform under a contract.'" *Johnson*, 999 F. Supp. 2d at 930 (quoting *Lamar Homes, Inc.*, 242 S.W.3d at 12). Therefore, "tort damages are generally not recoverable if the defendant's conduct 'would give rise to liability only because it breaches the parties' agreement.'" *Id.* (quoting *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991)).

The Court finds that Plaintiffs' negligence claim is barred by the economic loss doctrine. Plaintiffs do not allege an injury independent from the subject matter of the contract (*See* Dkt. #41 at ¶ 102). Plaintiffs allege that "[t]he negligence claim…relies upon [the] un-waivable duties [of good faith and ordinary care]." (Dkt. #73 at p. 21). However, the Court finds that these duties also relate to Plaintiffs' contractual claims, and do not create independent causes of action, to which Defendant is liable. Therefore, the Court finds that Plaintiffs' negligence claim is barred by the economic loss doctrine, and Defendant's motion for summary judgment as to that claim is granted.

*Waiver of Consequential Damages*

Defendant also asserts that "[i]n the alternative…, the Court should enter summary judgment on all of Plaintiffs' claim because the only damages Plaintiffs seek are consequential damages that have been contractually waived." (Dkt. #64 at p. 22). Plaintiffs assert that damages are not waived because the damages waiver is unenforceable (Dkt. #73 at p. 21).

The DAA contains a provision, which states as follows:

**WE [JPMC] WILL NOT BE LIABLE FOR INDIRECT, SPECIAL, OR CONSEQUENTIAL DAMAGES REGARDLESS OF THE FORM OF ACTION AND EVEN IF WE HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.**

(Dkt. #64, Exhibit A-1). First, Plaintiffs assert that the waiver is void because it is against Texas public policy (Dkt. #73 at p. 21). Specifically, Plaintiffs assert the following:

Texas Business and Commerce Code Chapter 4 governs Bank Deposits and Collections. The Texas Business and Commerce Code allows banks to vary certain provisions of state law by agreement, but absolutely prohibits any attempt to limit liability or damages for a bank's lack of good faith or failure to exercise ordinary care.

(Dkt. #73 at pp. 21-22) (citing Tex. Bus. & Comm. Code § 4.103(a)).

"The Texas Constitution protects the freedom to contract, and the Texas Supreme Court has long recognized a strong public policy in favor of preserving the freedom of contract." *Interstate 35/Chisam Road, L.P. v. Moayedi*, 377 S.W.3d 791, 797 (Tex. App.—Dallas 2012), *aff'd*, 438 S.W.3d 1 (Tex. 2014); *see* Tex. Const. art. I, § 16; *Fairfield Ins. Co. v. Stephens Martin Paving, L.P.*, 246 S.W.3d 653, 664 (Tex. 2008). "Absent a statute or fundamental public policy precluding waiver, a party may contractually waive even constitutional or statutory rights, whether present or future." *Moayedi*, 377 S.W.3d at 797 (citing *Wright v. Sport Supply Grp., Inc.*, 137 S.W.3d 289, 294 (Tex. App.—Beaumont 2004, no pet.)). "In examining an agreement to determine if it is contrary to public policy, a court looks to whether the agreement has a

tendency to injure the public good and considers the development and policies underlying any applicable statutes." *Id.*; *see Fairfield*, 246 S.W.3d at 666; *Johnson v. Structured Asset Serv., LLC*, 148 S.W.3d 711, 726-27 (Tex. App.—Dallas 2004, no pet.). "Unless the agreement contravenes some positive statute or some well-established rule of law, a court should refrain from characterizing the agreement as unenforceable and void as against public policy." *Moayedi*, 377 S.W.3d at 797 (citing *Lawrence v. CDB Servs., Inc.*, 44 S.W.3d 544, 553 (Tex. 2001), *superseded on other grounds by* Tex. Lab. Code § 406.003(e) (quoting *Sherrill v. Union Lumber Co.*, 207 S.W. 149, 153-54 (Tex. App.—Beaumont 1918, no writ))).

The Court agrees with Plaintiffs. Although the Texas Business and Commerce Code allows parties to vary the agreement, it expressly states that "the parties to the agreement cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary *or limit the measure of damages for the lack of failure*." Tex. Bus. & Comm. Code § 4.103(a) (emphasis added). The Court finds that the waiver provision in the DAA attempts to waive the damages that JPMC could incur, and thus, could violate Texas public policy if the bank is disclaiming responsibility for its own lack of good faith. *See Am. Airlines Emp. Fed. Credit Union v. Martin*, 29 S.W.3d 86, 95 (Tex. 2000) ("Section 4.103(a) permits parties to vary the effect of Article 4's provisions by agreement, as long as that agreement does not 'disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care,' or 'limit the measure of damages for such lack of failure.'").[12] Therefore, the Court finds that Defendant's motion for summary judgment as to the waiver of consequential damages is denied.

---

[12] Plaintiffs also assert that the damages waiver is void because it is unconscionable (Dkt. #73 at p. 23). The Court disagrees. Assuming *arguendo* that the agreement constituted a contract of adhesion, the Texas Supreme Court has held that "adhesion contracts are not *per se* unconscionable or void." *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 678 (Tex. 2006); *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 608 (Tex. 2005) (per curiam). Additionally, Plaintiffs have not presented additional evidence to the Court that would lead it to believe that procedural and substantive unconscionability exist. *See Am. Stone Diamond, Inc. v. Lloyds of London*, 934 F. Supp. 839, 844 (S.D. Tex. 1996).

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion for Summary Judgment (Dkt. #64) is hereby **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that Plaintiffs' Motion for Partial Summary Judgment (Dkt. #65) is hereby **DENIED**.

It is further **ORDERED** that Plaintiffs' claims are **DISMISSED** with prejudice as to the following:  (1) conversion; (2) tortious interference—banking; (3) violation of regulation CC; (4) defamation; and (5) negligence.

**SIGNED this 20th day of July, 2016.**


AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE