# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| STING SOCCER OPERATIONS GROUP LP; ET. AL. | § § § | |
| v. | § § | CASE NO. 4:15-CV-127<br>Judge Mazzant |
| JP MORGAN CHASE BANK, N.A. | § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant JPMorgan Chase Bank, N.A.'s Motion to Strike Expert Testimony of Christopher Kelly (Dkt. #48) and Defendant JPMorgan Chase Bank, N.A.'s Motion to Strike Expert Testimony of Barry Bell (Dkt. #49). After reviewing the relevant pleadings, the Court finds that Defendant's motion to strike Christopher Kelly should be granted in part and denied in part, and Defendant's motion to strike Barry Bell should be denied.

## BACKGROUND

The above-referenced case arises from Defendant JPMorgan Chase Bank, N.A.'s ("Defendant" or "JPMC") August 30, 2013 commencement of closure procedures on Plaintiffs' deposit accounts. On January 15, 2016, Plaintiffs filed their Second Amended Complaint, in which they alleged the following claims: (1) conversion; (2) tortious interference—banking; (3) tortious interference—customers; (4) breach of contract—improper restriction; (5) breach of contract—privacy policy; (6) wrongful dishonor; (7) violation of regulation CC; (8) business disparagement; (9) defamation; and (10) negligence (Dkt. #41)[1].

On February 2, 2016, Defendant filed its Motion to Strike Expert Testimony, in which it sought to strike the report and testimony of Christopher Kelly ("Kelly") (Dkt. #48). On February

---

[1] On July 20, 2016, the Court entered its Memorandum Opinion and Order regarding Defendant's Motion for Summary Judgment (Dkt. #64) and Plaintiffs' Motion for Partial Summary Judgment (Dkt. #65). In its order, the Court dismissed the following claims: (1) conversion; (2) tortious interference—banking; (3) violation of regulation CC; (4) defamation; and (5) negligence (Dkt. #87).

1

19, 2016, Plaintiffs filed their response (Dkt. #57). On February 22, 2016, Defendant filed its reply (Dkt. #58). On March 10, 2016, Plaintiffs filed their sur-reply (Dkt. #62).

On February 2, 2016, Defendant filed its Motion to Strike Expert Testimony of Barry Bell (Dkt. #49). The report contained Bell's qualifications, experience, and opinions concerning both the causation of financial damages, and amount of damages incurred (Dkt. #49, Exhibit A). On February 19, 2016, Plaintiffs filed their response (Dkt. #57). On February 22, 2016, Defendant filed its reply (Dkt #58). On March 10, 2016, Plaintiffs filed their sur-reply (Dkt. #62).

**LEGAL STANDARD**

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharm., Inc.*, the Supreme Court instructed courts to function as gatekeepers, and determine whether expert testimony should be presented to the jury. 509 U.S. 579, 590-93 (1993). Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590-91. A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, in order to be admissible, expert testimony must be "not only relevant but reliable." *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just

2

scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the court should consider numerous factors. *See Daubert*, 509 U.S. at 594. In *Daubert*, the Supreme Court offered the following, non-exclusive list of factors that courts may use when evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Id.* at 593-94; *Pipitone*, 288 F.3d at 244. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert*, 509 U.S. at 595.

The *Daubert* factors are not "a definitive checklist or test." *Daubert*, 509 U.S. at 593. As the Court has emphasized, the *Daubert* framework is "a flexible one." *Id.* at 594. The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *See Kuhmo*, 526 U.S. at 152. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Exploration & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citations omitted).

**ANALYSIS**

*Motion to Strike Christopher Kelly (Dkt. #48)*

Defendant moves to strike Kelly's report in its entirety and his expert testimony at trial (Dkt. #48 at p. 1). Defendant argues that Kelly's opinions are improper for the following reasons: (1) his opinions constitute impermissible legal conclusion; (2) his conclusions are not sufficiently reliable; and (3) he lacks the necessary qualifications (Dkt. #48 at p. 1).

3

Rule 702 requires that an expert witness be qualified. "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009); *see Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). However, Rule 702 does not demand that an expert be highly qualified in order to testify, and "[d]ifferences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact[.]" *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).

Rule 702 also requires that expert testimony be relevant. "Relevance depends upon 'whether [the expert's] reasoning or methodology properly can be applied to the facts in issue.'" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 593). The Fifth Circuit has stated that testimony is relevant when it "assist[s] the trier of fact to understand the evidence or to determine a fact in issue." *Pipitone*, 288 F.3d at 245 (quoting *Daubert*, 509 U.S. at 591).

Finally, Rule 702 requires that expert testimony be reliable. "Reliability is determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Knight*, 482 F.3d at 352 (quoting *Daubert*, 509 U.S. at 592-93). When determining reliability, "[t]he court focuses on the expert's methodology, not the conclusions generated by it." *Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 783 (N.D. Tex. 2013) (citing *Nunn v. State Farm Mut. Auto Ins. Co.*, No. 3:08-CV-1486-D, 2010 WL 2540754, at *4 (N.D. Tex. June 22, 2010)). "If, however, 'there is simply too great an analytical gap between the [basis for the expert opinion] and the opinion proffered,' the court may exclude the testimony as unreliable." *Orthoflex*, 986 F. Supp. 2d at 783 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136,

146 (1997)); *see also Johnson v. Arkema, Inc.*, 685 F.3d 452, 460-61 (5th Cir. 2012); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 278-79 (5th Cir. 1998).

Defendant first argues that the Court should strike Opinion 1, "[JPMC] failed to comply with the term of the Deposit Account Agreement ("DAA") that served as the contract between [JPMC] and Plaintiffs[,]" because it contains an impermissible legal conclusion (Dkt. #48 at p. 2). Defendant argues that Kelly's opinion constitute a legal conclusion because it argues that JPMC breached the DAA (*See* Dkt. #48 at p. 2). Plaintiffs contend that Kelly is not testifying that Defendant breached the contract between JPMC and Plaintiffs, rather he testifying as to disputed factual issues surrounding Defendants alleged breach (Dkt. #57 at p. 9). Plaintiffs argue that although the ultimate conclusion of breach may be legal question for the Court, what occurred factually is a question for the jury (Dkt. #57 at p. 9). Plaintiffs assert that this testimony will assist the jury in understanding business language and normal terms of operation; and is therefore, critical to determining disputed facts and assessing discrepancies in this case (Dkt. #57 at p. 11).

The Federal Rules of Evidence allow an expert to assert opinions that "embrace an ultimate issue to be decided by the trier of fact." FED. R. EVID. 704(a). However, an expert witness may not offer opinions that amount to legal conclusions. *C.P. Interests, Inc. v. Cal. Pools, Inc.*, 238 F.3d 690, 697 (5th Cir. 2001); *see also Calderon v. Bank of America, N.A.*, 941 F. Supp. 2d 753, 759-60 (W.D. Tex. 2013) (noting that the law is not a proper subject of expert opinion testimony). The Fifth Circuit has held that while experts may give their opinions on ultimate issues, our legal system reserves to the trial judge the role of deciding the law for the benefit of the jury. *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997) (quoting *Specht v. Jensen*, 853 F.2d 805, 808-09 (10th Cir. 1988)).

The Court finds that Opinion 1 does not contain impermissible legal conclusions. Although the ultimate determination of breach of contract is a question for the court, disputed facts, surrounding breach of contract, are submitted to the jury. The Court finds that Kelly's opinion is admissible because as it pertains to his interpretation of the disputed facts surrounding JPMC's alleged breach. Therefore, Defendant's motion to strike should be denied, as to Opinion 1.

Defendant next argues that the Court should strike Opinion 2, "[JPMC] failed to act in a commercially reasonable manner under the circumstances by restricting the Plaintiffs' accounts[,]" because it is conclusory (Dkt. #48 at p. 3). Defendant asserts that Kelly does not cite an industry standard or interviews with other banks in forming his opinions (Dkt. #48 at pp. 3-4). Plaintiffs contend that Kelly has provided an explanation supporting his opinion that Defendant acted unreasonably based on the timeline of events and actions taken (Dkt. #57 at p. 11). Additionally, Plaintiffs assert that Kelly's commercial reasonableness opinion is based on his extensive experience and analysis of the facts at issue (Dkt. #57 at p. 12).

A witness' experience, studies, and education, combined with a review of the relevant materials can provide a reliable basis for expert testimony. *Perez v. City of Austin*, No. A-07-CA-044 AWA, 2008 WL 1990670, at *10 (W.D. Tex. May 5, 2008); *see also Pipitone*, 288 F.3d at 247 (citing *Kumho*, 526 U.S. at 137 ("no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.")). The Court finds that this testimony is reliable; and therefore, admissible. Kelly has sufficient experience in the banking industry relevant to the present case to draw conclusions as to commercial reasonableness based on his analysis of the facts. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than

6

its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land Situated in Leflore Cty., Miss.,* 80 F.3d 1074, 1077 (5th. Cir. 1996). The Court further finds that the Defendant's arguments regarding Kelly's failure to cite industry standard or interview other banks goes to the weight, rather than to the admissibility of the testimony. Therefore, the Court finds that Defendant's motion to strike Opinion 2 should be denied.

Defendant argues that the Court should strike Opinion 3, "[t]he restrictions placed on the Plaintiffs' accounts by [JPMC] were not commercially reasonable because they failed to comply with Fed Regulation CC regarding funds availability and [JPMC's] own Funds Availability Policy[,]" because it is an impermissible legal conclusion (Dkt. #48 at p. 5). In its Memorandum Opinion and Order on July 20, 2016, the Court dismissed Plaintiffs' Regulation CC claim (Dkt. #87). Therefore, Kelly's opinion as to the Regulation CC claim should be stricken, as that claim is no longer part of the case. Therefore, Defendant's motion to strike is granted, as to Kelly's opinion regarding the Regulation CC claim.

Defendant next asserts that the Court should strike Opinion 4, "[JPMC] should have been aware that if the authorities considered Plaintiffs' accounts to be involved in money laundering or other illegal activity they would have acted to seize such funds before August 30, 2013[,]" for the following reasons: (1) Kelly is not qualified to give an opinion as to what "the authorities" did or would have done; and (2) his opinion is not sufficiently reliable because it is unsupported by factual analysis (Dkt. #48 at p. 6). Plaintiffs contend that Kelly has sufficient experience "with respect to bank fraud investigations" to justify his opinions (Dkt. #57 at p. 14). Plaintiffs assert that Kelly's opinions are supported by a factual analysis based upon his prior experience (Dkt. #57 at p. 14).

The Fifth Circuit has held that "[t]o qualify as an expert, the witness must have such knowledge or experience in [his] field or calling to make it appear that his opinion or inference will probably aid the trier in his search for truth." *Metzler v. XPO Logistics, Inc.*, No. 4:13-CV-278, 2014 WL 7146108, at *3 (E.D. Tex. Dec. 15, 2014). Where there are reasonable indications of an expert's qualifications, the question is no longer one of gatekeeping, but one of fact for the trier of fact. *Boral v. Odyssey Pictures Corp.*, No. 4:14-CV-00044, 2015 WL 993241, at *2 (E.D. Tex. Mar. 4, 2015). "A lack of personal experience [] should not ordinarily disqualify an expert, so long as the expert is qualified based on some other factor provided in Rule 702." *United States v. Wen Chyu Liu*, 716 F.3d 159, 168 (5th Cir. 2013). "A lack of specialization should generally go to the weight of the evidence rather than its admissibility and '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (quoting *Daubert*, 509 U.S. at 596). The Court finds that Kelly possesses sufficient experience regarding law enforcement interaction with banks to justify his opinions. Defendant's arguments go to the weight to be given Kelly's testimony, rather than his qualifications. These are considerations that should be determined by the trier of fact.

Additionally, the Court finds that Kelly's opinion is reliable. Kelly's opinion relates to disputed facts regarding the justifications of the restrictions on Plaintiffs accounts. The Court finds that Kelly's testimony would "assist[s] the trier of fact to understand the evidence or to determine a fact in issue[,]" and is obtained from his experience within banking industry. *Pipitone*, 288 F.3d at 245 (quoting *Daubert*, 509 U.S. at 591). Therefore, the Court finds that Kelly's opinion is reliable; and Defendant's motion to strike Opinion 4 should be denied.

After reviewing the relevant pleadings, the Court finds that Defendant's motion to strike should be granted in part and denied in part. Kelly's expert opinion should be stricken only to the extent that the Court dismissed Plaintiff's Regulation CC claim.

*Defendant's Motion to Strike Barry Bell (Dkt. #49)*

Defendant moves to strike Bell's testimony as to his opinion regarding causation (Dkt. #49 at p. 1). Defendant argues that Bell's opinions are improper because Bell (1) failed to consider alternate causes of Plaintiffs' alleged damages; (2) asserted conclusory causation opinions, which were not supported by any analysis; and (3) did not demonstrate his own qualifications sufficiently to opine on the causation issue (*See* Dkt. #49 at p. 1). Plaintiffs assert that Bell considered other possible causes of the alleged damages, performed a thorough causation analysis, and he is fully qualified to opine on the issue of causation (Dkt #57 at pp. 2-7).

First, Defendant argues that Bell's testimony should be stricken because Bell failed to consider alternate causes of the Plaintiffs' alleged financial damages, specifically Plaintiff Brent Coralli's ("Coralli") felony conviction in 2013 (Dkt. #49 at p. 2). Plaintiffs assert that the timeline of events eliminates the felony conviction as a possible cause of damages (Dkt. #57 at pp. 4-5). Plaintiffs argue that Coralli's guilty plea was accepted in January and February of 2013, and his legal issues were well known within the soccer community by May 2013, due to a news coverage (Dkt. #57 at p. 5). Plaintiffs further contend that their membership issues did not occur until a year later in July of 2014 (Dkt. #57 at p. 5). Defendant's argument is similar toa that in *Chisesi Brothers Meat Packing Co., Inc. v. Westchester Surplus Lines Insurance Co.*, No. 09-6523, 2010 WL 3720465, at *4 (E.D. La. Sept. 9, 2010). In *Chiesi Brothers*, the district court found that an expert's opinion that a hurricane was the cause of damage done to a roof was

9

admissible, even though it assumed the hurricane was the cause of the damage. The district court reasoned that, "[e]limination of alternative possibilities is one method of arriving at a result reliably, but it is not the only method." *Id*. at 4.

The Court finds that Bell's failure to consider Plaintiff's criminal conviction does not render his opinion as to causation inadmissible under the circumstances. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land Situated in Leflore Cty., Miss.,* 80 F.3d 1074, 1077 (5th. Cir. 1996). Defendant's argument goes to the weight to be given Bell's testimony, which should be left to the trier of fact. Therefore, the Court finds that Bell's testimony should not be stricken.

Defendant further argues that Bell's causation testimony should be stricken because it does not include sufficient analysis (Dkt. #49 at p. 3). Plaintiffs contend that Bell's causation finding is grounded in the evaluation of the factual testimony of persons within Plaintiffs' youth soccer organization, as well as the analysis of the organizations financial records (Dkt. #57 at p. 6). Upon reviewing Bell's report, the court finds that the financial analysis provided, coupled with facts gathered via his interview of organization personnel, is sufficiently reliable to admit his testimony as to causation pursuant to the Federal Rule of Evidence 702. FED. R. EVID 702. Therefore, the Court finds that Bell's testimony should not be stricken on these grounds.

Finally, Defendant argues that Bell's opinion should be stricken because Bell is not qualified to render an opinion about the cause of the alleged damages (Dkt. #49 at p. 2). Specifically, Defendant points out that Bell does not have experience in either the youth soccer business or financial services industry (Dkt. #49 at p. 2). However, the Court finds that Bell is sufficiently qualified to render an opinion regarding damages. Bell holds a Master's degree in

Business Administration ("MBA") from Southern Methodist University, has over twenty years of experience analyzing damages in commercial litigation matters, and has given several presentations on the subject of financial damages (Dkt. #49, Exhibit A at pp. 29-34). The Court finds that Bell has demonstrated adequate experience, education, training, skill, and knowledge, to be considered qualified to testify pursuant to Rule 702. FED. R. EVID. 702. The Court's gate-keeping function under *Daubert* is not intended to replace the adversarial system and the jury's responsibility to evaluate and weigh the evidence presented by each party's experts. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *see also 14.38 Acres of Land Situated in Leflore Cty., Miss.*, 80 F.3d at 1078 (The trial court must act "with proper deference to the jury's role as the arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."). Therefore, the Court finds that Defendant's motion to strike Barry Bell is denied.

## CONCLUSION

It is therefore **ORDERED** that Defendant JPMorgan Chase Bank, N.A.'s Motion to Strike Expert Testimony of Christopher Kelly (Dkt. #48) is hereby **GRANTED IN PART AND DENIED IN PART**. Christopher Kelly's expert report is stricken as to the violation of the Regulation CC claim (Opinion 3).

It is further **ORDERED** that Defendant JPMorgan Chase Bank, N.A.'s Motion to Strike Expert Testimony of Barry Bell (Dkt. #49) is hereby **DENIED**.

**SIGNED this 2nd day of August, 2016.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE